## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | Chapter 7 |
| In re: | : | |
| | : | |
| OPEN RANGE COMMUNICATIONS, INC. | : | Case No. 11-13188 (KJC) |
| | : | |
| Debtor | : | |
| | : | |
| | : | |
| VELOCITEL, INC. | : | Adv. Proc. No. 12-50476 (KJC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES M. FORMAN, in his capacity as | : | (Re: D.I. 18) |
| chapter 7 trustee for OPEN RANGE | : | |
| COMMUNICATIONS, INC., UNITED STATES | : | |
| DEPARTMENT OF AGRICULTURE, | : | |
| RURAL UTILITIES SERVICE, *et al.* | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM DISMISSING CROSS CLAIMS[1]

## BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On October 6, 2011, Open Range Communications, Inc. ("Open Range" or the "Debtor")

filed a voluntary chapter 11 bankruptcy petition.  On the petition date, Open Range held, among

other assets, a deposit account with a balance of $4.9 million.  Pursuant to an Order dated

October 11, 2012, (D.I. 45), those funds were transferred to an escrow account (the "Escrow

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B), (C), and (E).  At oral argument on January 30, 2013, the parties consented to this Court entering a final order on the matter before it.  If any court determines that a final order or judgment  by this Court is not consistent with Article III of the United States Constitution, then this Memorandum and Order are submitted as proposed findings of fact and conclusions of law in accordance with the District Court's Amended Standing Order of Reference dated February 29, 2012.

Account").[2]

On February 24, 2012, Open Range's chapter 11 case was converted to a chapter 7 case and, on February 27, 2012, Charles M. Forman was appointed as the chapter 7 trustee (the "Trustee").

On April 12, 2012, Velocitel, Inc. ("Velocitel") filed the above-captioned adversary proceeding against the Trustee and the United States of America, Department of Agriculture, Rural Utilities Services ("RUS") seeking a declaratory judgment regarding the rights of the parties to the Escrow Account. On May 14, 2012, the Trustee filed an answer to the complaint, along with counterclaims, cross-claims and a third-party complaint seeking, among other relief, a declaratory judgment that the Escrow Account was property of the estate. (A.D.I. 6).

As a result of the Trustee's third-party complaint, other parties,  including G4S Technology LLC ("G4S"), were added as third-party defendants to the adversary proceeding. On July 10, 2012, G4S filed an answer to the third-party complaint, counterclaims and cross-claims against various parties, including RUS.  (A.D.I. 11).   On July 24, 2012, RUS filed a motion to dismiss the cross-claims brought by G4S and Velocitel against RUS (the "Motion to Dismiss"). (A.D.I. 18).   On October 11, 2012, G4S filed a brief in opposition to the Motion to Dismiss (A.D.I. 52), and on November 16, 2012, RUS filed its reply brief (A.D.I. 55).

On November 21, 2012, the Trustee filed a motion for approval of a settlement resolving most of the disputes by and among the parties (the "Settlement") (A.D.I. 57), which was approved, after a hearing, by Order dated December 21, 2012 (A.D.I. 76).   However, the

---

[2]Reference to docket items in the main bankruptcy case are referred to herein as D.I. __. Reference to docket items in the adversary proceeding are referred to herein as A.D.I. __.

Settlement specifically did not resolve any claims or causes of action that G4S had to the remaining funds in the Escrow Account or against RUS, Velocitel and Alvarion, Inc. (another third-party defendant).[3]  (Settlement Agreement, § 3.5).

On January 30, 2012, the Court heard oral argument on the Motion to Dismiss.  For the reasons set forth herein, the Motion to Dismiss will be granted and the cross-claims filed by G4S will be dismissed.

### Factual Allegations in G4S's Cross-Claims

In January 2009, RUS entered into a loan agreement (the "Loan Agreement") with Open Range to provide up to $267 million to Open Range for the construction of infrastructure necessary to provide broadband services to certain rural communities.  Pursuant to the Loan Agreement, when Open Range satisfied certain conditions, the RUS would deposit advances in an account at TD Bank, N.A. (the "Deposit Account"), out of which RUS would pay certain costs connected to construction of the broadband network.

On June 15, 2009, G4S and Open Range entered into a Master Services Agreement ("MSA"), under which G4S would provide materials and services for construction of the broadband network.  The MSA was amended in December 2010.  The MSA states, in part, that Open Range "contemplates issuing a series of RUS Forms 245 and 773 over the next fifty-four (54) months to engage the services of [G4S] to provide materials and/or Services in RUS Markets as described in each statement of work attached to such RUS Forms, all of which relate

---

[3]The "Draft Settlement Agreement" (the "Settlement Agreement") was attached as Exhibit A to the December 21, 2012 Order approving the Settlement.  Pursuant to the Settlement, the amount of $437,739.49 was to remain in the Escrow Account (the "Retained Reserve") until a final judgment by appeal or expiry of time to appeal in the litigation on competing claims to the Retained Reserve of RUS and G4S.  (Settlement Agreement, § 2.1).

to [Open Range's] deployment plan as set forth in the six month plans approved by RUS."

(A.D.I. 23, Cross-claim Ex. B, p. 1).  Under the MSA, G4S and Open Range entered into 66

agreements for materials and services related to the Project using RUS Forms 245 and 773 (the

"Form Agreements").   G4S was paid $15,713,427.78 by Open Range for work relating to

construction under the MSA.  However, G4S was still owed no less than $10,321,340.11 under

the MSA for additional construction that was intended to be funded out of the loan proceeds.

G4S has submitted the appropriate documentation to Open Range to receive payment, but Open

Range and/or RUS have failed to remit funding to G4S.   G4S asserts that Open Range's draw

requests were submitted to RUS on behalf of G4S and that funds were paid by RUS into the

Deposit Account and earmarked for payment to G4S.  However, Open Range did not remit the

earmarked funds to G4S and the funds remained in the Deposit Account.[4]

## Motion to Dismiss - Standard

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b) governs a motion to

dismiss for failing to state a claim upon which relief can be granted.  "The purpose of a motion

to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the

merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496

F.Supp. 2d 404, 407 (D.Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

When reviewing a motion to dismiss, the Court will construe the complaint "in the light most

favorable to the plaintiff." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011)

quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

---

[4]In the Settlement Agreement, the parties (including G4S) acknowledged that the funds in the
Deposit Account were moved to the Escrow Account, pursuant to the October 11, 2011 Order of this
Court (D.I. 45).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

The Third Circuit Court of Appeals has outlined a three-step process to determine the sufficiency of a complaint under *Twombly* and *Iqbal*:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago [v. Warminster Twp.*, 629 F.3d [121] at 130 [3d Cir. 2010] (quoting *Iqbal,* 129 S.Ct. at 1947, 1950); *see also Great Western Mining & Min. Co. v. Rothschild LLP*, 615 F.3d 159, 177 (3d Cir.2010).

*Burch*, 662 F.3d at 221.

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint."  *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002), citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).   When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Commonwealth of Pa., ex real. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988), quoting *Car Carriers v.*

*Ford Motor Co.,* 745 F.2d 1101,1107 (7th Cir. 1984) *cert denied* 470 U.S. 1054 (1984).  The

movant carries the burden of demonstrating that dismissal is appropriate.  *Intel Corp.*, 496

F.Supp.2d at 408.

**Discussion**

G4S asserts two cross-claims against RUS.  First, G4S requests a declaratory judgment

that RUS has no interest in the Deposit Account because (i) the Loan Agreement required that

funds in the Deposit Account be only for the purposes for which the advances were made, (ii) the

Deposit Account is not property of the estate, (iii) G4S's interest in the Deposit Account is

senior to any interest of RUS or the Trustee.  Second, G4S requests an accounting to determine

the amount deposited into the Deposit Account to pay G4S.  At oral argument, G4S withdrew its

second cross-claim for an accounting.

In the cross-claim for a declaratory judgment, G4S alleges that "the funds in the Deposit

Account, in whole or in part, are being held in trust for remittance to G4S."  (A.D.I. , ¶34).  At

oral argument, G4S agreed that its only remaining request for relief was for a determination that

the funds in the Deposit Account were held as a "resulting trust" under Delaware law.  In the

*Catholic Diocese of Wilmington, Inc.* case, my colleague, Judge Sontchi, discussed the

recognition of a resulting trust under Delaware law:

> Notwithstanding the absence of a written agreement, the Debtor may hold the
> funds, under a "resulting trust."  Under Delaware law, "[a] resulting trust is one
> implied by law from the supposed intentions of the parties and the nature of the
> particular transaction."  More specifically, a resulting trust "arises where a person
> conveys property under circumstances that raise an inference that the person does
> not intend the person taking or holding the property to have the beneficial interest
> in the property."  The inference arises from the character of the transaction, rather
> than from a declaration of intention.

*Official Comm. Of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic*

6

*Diocese of Wilmington, Inc.)*, 432 B.R. 135, 148 (Bankr.D.Del. 2010).  In the *Catholic Diocese* case, individual parishes transferred funds to the debtor to participate in a pooled investment program, which combined the assets of the participants (investors) to provide them with investment opportunities that would be unavailable to them individually.  *Id.* at 139.  The investors' funds were deposited into a specific account.  *Id.* The evidence established that the parties intended that the funds would remain the property of the investors and that the investors could withdraw the funds at any time.  *Id.* at 149.  Judge Sontchi held that the account was a resulting trust and that the funds transferred to the debtor by investors were trust funds.[5]  *Id.*

G4S argues that the Deposit Account meets the requirements for a resulting trust because the Loan Agreement provided clearly that Open Range was not to have beneficial title to the funds in the Deposit Account; instead, the funds were held for the benefit of approved third-party contractors, such as G4S.  To support its argument, G4S cites to the following provisions of the Loan Agreement:

- The Loan Agreement was "made solely to finance the project specifically described in the Application" - - which was Open Range's construction of a broadband network.  Loan Agreement, § 3.4(a).

- To obtain funds from RUS, Open Range was required to submit Financial Requirement Statements that "contained line items on who would get paid and in what specific amount" Loan Agreement, Attachment 1 [RUS Bulletin 1738-2], p. 24, Sec. 5.

- The funds advanced by RUS pursuant to the Loan Agreement were then placed in a segregated deposit account.  Loan Agreement, §5.4(a).

- The funds advanced by RUS, after being deposited in the segregated account, were to "be used solely for the purposes for which the Advance was made" and

---

[5]However, Judge Sontchi also determined that the defendants had the burden of identifying and tracing the trust funds if those funds had been commingled with non-trust funds.  *Id.* at 149.  Because the defendants failed to meet their burden of tracing those funds, he determined that the account was property of the estate.  *Id.* at 139.

> "be disbursed only up to the amount approved for advance as indicated on the financial requirement statement."  Loan Agreement, §5.4(a) and Attachment 1, p. 23, Sec. 4.

*See* G4S Response Brief (A.D.I. 52) at 6-7.

A resulting trust is implied by law from the intention of the parties and the nature of the particular transaction.  That RUS intended to limit Open Range's use of the funds, without more, is insufficient to reflect any intent by the parties to create a trust in favor of third-party contractors, such as G4S. When the language of Loan Agreement is viewed in its entirety, the intent between RUS and Open Range with respect to the Deposit Account becomes clear: loan advances were placed into a deposit account pledged to RUS as security for the loan.  Section 5.4 of the Loan Agreement provides:

> (a)     The Borrower shall open and maintain a deposit account pledged to RUS ("Pledged Deposit Account") in a bank . . . or other federal agency acceptable to RUS and shall be designated by the RUS name of the Borrower followed by the words "Pledge Deposit Account." The Borrower shall promptly deposit proceeds from all Advances of the Broadband Loan . . . and other funds described on Schedule 1 hereto (hereinafter "Additional Funds") into the Pledged Deposit Account.  Moneys in the Pledged Deposit Account shall be used solely for the purposes for which the Advance was made, for the purposes as set forth in Schedule 1 hereto (hereinafter "Additional Purposes") *or for such other purposes as may be approved by RUS*.  Deposits and disbursements from the Pledged Deposit Account shall be made and recorded in accordance with Attachment 1 hereto, RUS Bulletin 1738-2, as amended and supplemented from time to time.

> (b)     *First Lien on Pledged Deposit Account.*  The Borrower shall perfect and maintain a first and prior lien in the Pledged Deposit Account (pursuant to a deposit account agreement or similar agreement or mechanism for perfecting as provided by applicable law) in form acceptable to RUS.

Loan Agreement, §5.4 (emphasis added).  The plain language of the Loan Agreement establishes the understanding between RUS and Open Range that the Deposit Account is to be used only for purposes approved by RUS.   While those purposes may include payment of approved invoices

from third-party contractors, there is no indication that the parties intended to establish a trust exclusively in favor of third-party contractors or that RUS intended to relinquish any right to the funds once placed into the Deposit Account.

G4S argues that this matter is not appropriate for a motion to dismiss because the issue of whether Open Range pledged the Deposit Account funds to RUS and whether RUS perfected its interest in the Deposit Account concern facts to be determined after discovery at trial.[6] However, whether RUS obtained a perfected security interest is not relevant to G4S's claim for a resulting trust.  The issue, here, is whether the facts alleged about the intention of the parties and the character of the transaction plausibly support a claim that the Deposit Account was a resulting trust.

It is appropriate to consider the language of the Loan Agreement, which was attached to the Complaint and relied on in the cross-claims, to determine the parties' intent.  Under Delaware law, the interpretation of contract language is a question of law.  *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F.Supp.2d 476, 481 (D.Del. 2003) (citation omitted). "[W]hen the language is unambiguous and has 'an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.'" *Id.*  G4S's allegations based on select phrases in the Loan Agreement do not support its trust claim.  The plain language of the Loan Agreement contradicts any such claim.  The Loan Agreement, in Section 5.4 and as a whole, demonstrate the intention of RUS and Open Range to establish a Pledged Deposit Account to be

---

[6]Even if RUS's security interest was not perfected at the time of the bankruptcy filing, the Debtor (now, the Trustee) would receive the benefit of such failure by virtue of Bankruptcy Code §544(a) and §550, allowing avoidance of unperfected security interests for the benefit of the estate.  Any interest in what the Settlement calls the Retained Reserve, which would have been held by the estate, was relinquished by the Trustee in the Settlement, thus, unavailable to G4S.

9

used for purposes as approved by RUS.

## **Conclusion**

For the reasons set forth above, the Motion to Dismiss will be granted.  An appropriate

order follows.


BY THE COURT:


_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE


Dated: February 12, 2013

10